UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK QUIGLEY, | 1:08-CV-01302 OWW DLB |
| Plaintiff, | MEMORANDUM DECISION RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT/ ADJUDICATION (DOCS. 11 & 36) |
| v. | |
| TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, and DOES 1 through 25, inclusive | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Jack Quigley ("Plaintiff") has sued Defendant
Travelers Property Casualty Insurance Company ("Defendant") for
(1) breach of contract, and (2) breach of the implied covenant of
good faith and fair dealing arising out of Defendants' refusal to
defend Plaintiff in an underlying state civil suit.  Before the
court for decision are cross-motions for partial summary
judgment/ summary adjudication on the duty to defend.  Docs. 11 &
36.

## II.  BACKGROUND

At all relevant times, Plaintiff held a homeowners insurance
policy issued by Defendant (the "Policy").  Plaintiff's Statement
of Undisputed Material Facts ("PUMF"), Doc. 13 at #1.  The
Policy, which was in effect January 15, 2003 through January 15,
2004, provides in pertinent part:

1

> If a claim is made or suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, even if the claim or suit is false we will:
>
>> a. Pay up to our limit of liability for the damages for which an insured is legally liable. Damages include prejudgment interest awarded against an insured; and
>>
>> b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

Doc. 22 at pp 47-48 of 76. (emphasis omitted). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which result, during the policy period, in: a. bodily injury; or b. property damage." Doc. 22 at 33 of 76. No definition of "accident" is provided.

The Policy also contains certain exclusions including:

> Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:
>
> a. which is expected or intended by any insured...
>
> ***
>
> k. [a]rising out of sexual molestation, corporal punishment or physical or mental abuse ....

Doc. 22 at 48, 49 of 76.

On August 13, 2004, Plaintiff was charged in the Superior Court of California, County of Fresno with two felony counts of continuing sexual molestation and abuse, and one felony count of committing a lewd act upon a child. Criminal Complaint, *People*

*v. Jack Barry Quigley*, No. 03907697-7, Doc. 43, Attachment A.[1]
The alleged victim was Plaintiff's step-granddaughter, who was
eight years old at the time of the alleged abuse.  She accused
Plaintiff of repeatedly sexually molesting her.  Decl. of Karen
Plumlee, Doc. 24-2, at ¶8.  The criminal action resulted in a
hung jury.  Defendant's Statement of Undisputed Facts ("DSUF"),
Doc. 38 at #11.  Subsequently, Plaintiff entered a no contest
plea to one count of annoying or molesting a child under the age
of eighteen, Cal. Penal. Code 647.6(a).  *Id.* at #12; Doc. 43, Ex.
B.[2]  As a result, Plaintiff was required to and did register as a
sex offender.  *Id.*

---

[1]    Defendant's request that the court take judicial notice
of this public record under Federal Rule of Evidence 201 is
GRANTED.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.
2001).

[2]    Defendant requests judicial of Plaintiff's no contest
plea.  Plaintiff objects to the use of this document to establish
that he admitted to the acts alleged, pursuant to Federal Rule of
Evidence 410, which prohibits the admission of no contest pleas
in any civil or criminal action against the person who made the
plea.  Defendant asserts that the evidence is not being submitted
for the truth of that matter asserted, rather it is being
introduced to show Plaintiff's state of mind.  This argument is
without merit, as no contest pleas are per se inadmissible under
Rule 410 for <u>any</u> purpose adverse to the person who made the plea.
Plaintiff's objection is SUSTAINED.
    This ruling also applies to Plaintiff's objection to
paragraph 14 of the Plumlee Declaration, which concerns the no
contest plea.  *See* Doc. 54.  That objection is SUSTAINED.
Plaintiff further objects to statements made in paragraphs 15 and
16 of the Plumlee declaration, which explain the reasons behind
Travelers' decision to deny coverage.  Plaintiffs objections to
these paragraphs as "irrelevant and immaterial" are OVERRULED, as
Travelers' reasons for denying coverage are directly put in issue
by the breach of contract and bad faith claims.

In April 2008, Jane Doe filed a complaint ("Underlying Complaint" or "Underlying Action")[3] in Fresno County Superior Court against Plaintiff, asserting three causes of action: (1) battery; (2) sexual battery; and (3) intentional infliction of emotional distress ("IIED"). Doc. 14-2. The Underlying Complaint contains no factual preamble. *Id*. at 1. The Battery cause of action states, in pertinent part:

> 3.   On or about 2002 continuing until October 2003, Defendant, JACK QUIGLEY intentionally and recklessly did acts which resulted in harmful and offensive contact with the Plaintiff's person, including but not limited to: making suggestive and sexual advances, touching Plaintiff in a sexual and offensive manner, and engaging in sexual copulation and other acts of carnal knowledge with Plaintiff, JANE DOE 1.
>
> 4.   Because of Defendant's position of authority and Plaintiff's minority, Plaintiff was unable to, and did not, consent to the aforementioned acts.
>
> 5.   As a direct, legal and proximate result of the acts of Defendants, and each of them, as aforesaid, Plaintiff, JANE DOE 1, sustained serious, and permanent injuries to her person, all to her damage in an amount to be shown according to proof and within the jurisdiction of the Superior Court.
>
> 6.   As a direct, legal and proximate result of the aforesaid battery of Defendants, and each of them, Plaintiff was compelled to and did employ the services of hospitals, physicians and surgeons, nurses, and the like, to care for and treat her, and did incur hospital, medical, professional and incidental expenses, and Plaintiff is informed and believes, and upon such information and belief alleges, that she will necessarily by reason of her injuries, incur additional like expenses for an indefinite period of time in the future, all to Plaintiff's damage in a sum to be shown according to proof.
>
> 7.   Plaintiff is informed and believes that the aforesaid acts directed toward the Plaintiff were

---

[3]   Defendant's request that the court take judicial notice of this pleading, a matter of public record, under Federal Rule of Evidence 201 is GRANTED.

4

carried out with a conscious disregard of Plaintiff's
right to be free from such tortious and criminal
behavior, such as to constitute oppression, fraud or
malice pursuant to California *Civil Code* Section 3294,
entitling Plaintiff to punitive damages in an amount
appropriate to punish and set an example of said
Defendant, Jack Quigley.

Doc. 14-2.

During the course of discovery in the Underlying Action, the
alleged victim responded to special interrogatories asking:

Please identify each and every "act", including a
detailed description of the act and the date the act
was performed, which resulted in "harmful and offensive
contact" with the victim as alleged in the [first cause
of action for Battery].

Doc. 63 at p. 6 of 31.

The victim responded as follows:

*Sexual Molestation*

Sometime in the latter part of 2002, before her
8th birthday, at various times, Jack Quigley began
sexually molesting Jane Doe. Such acts included
performing oral sex on Jane Doe; the forcing of Jane
Doe to perform oral sex on Jack Quigley. This sexual
molestation occurred on approximately 12 different
occasions and at three different locations. One of the
locations was at [] Beal's Quarter Horses in Clovis,
California. Another location was at [] North Riverbend
Avenue in Sanger, California. The third location was
at [] East Woodhaven in Fresno, California[.] Jane Doe
alleges on multiple occasions at the location at Beal's
Quarter Horses, Jack Quigley took off Jane Doe's Pants
and underwear where he proceeded to rub and pour baby
powder onto Jane Doe's pelvic area. On most of these
occasions, if not all, Jack Quigley "licked" Jane Doe's
vaginal area -- telling her to just lay there and
"relax." At the Riverbend location, when Jane Doe
would spend the night there with her cousins, Jack
Quigley would come into the bedroom where Jane Doe was
sleeping -- she doesn't remember at what time during
the night but she knows that she usually was asleep.
Jack Quigley would lift her from the bed and take her
to the couch. He would usually have his pants down to
his legs. He always wore "tidy whites" (white briefs).
He would pull out his penis from the front opening and
put it in her mouth. Jane Doe specifically remembers
that one time, Jack Quigley ejaculated on the side of
her face (she still thinks that he was peeing) and she

5

> remembers that it went down the side of her neck. On some of these occasions, Jack Quigley would rub his penis on the side of Jane Doe's face until he ejaculated. On a few occasions, (Jane Doe does not remember which) during the daytime when her maternal grandmother, Connie, was at work, Jack Quigley would have Jane Doe perform oral sex on him.

### *Negligence*

> At one of the locations ... at Beal's Quarter Horses in Clovis, California, Jack Quigley, on several different occasions, rubbed Neosporin onto Jane Doe's private areas which resulted in severe urinary tract infection. Jane Doe was required to take substantial amounts of antibiotics, incurred medical expenses and experience[d] substantial pain and suffering due to the negligent acts of Jack Quigley.

On July 15, 2008, Plaintiff's wife notified Defendant of the Underlying Action. DSUF at #6. She also mailed to Travelers a chronology of the sequence of events leading up to the criminal charges and criminal trial against Plaintiff she prepared, entitled the "Unjust Justice System." DSUF #7; *see also* Decl. of James Wilkins in Opp'n to Defendant's Mot. for Sum. J., Doc. 45, Att. A. The first page of this document suggests that, at least initially, the victim's mother confronted Plaintiff and his wife about putting baby powder and Neosporin on the victim to prevent and correct skin irritation associated with horseback riding, the application of which apparently led to the victim contracting a bladder infection. *Id.* No mention was made at this time of allegations of sexual molestation. There is no evidence in the record that clearly explains how these allegations evolved into the criminal case, in which the victim eventually accused Plaintiff of sexually molesting her on repeated occasions.

Defendant denied coverage and refused to defend Plaintiff in the Underlying Action, concluding that Plaintiff's policy did not

cover the claims alleged in the Underlying Complaint, because: (a) they were not "accidental" in nature, and therefore did not qualify as an "occurrence" under the Policy; and (b) they were excluded under the Intentional Acts and/or Sexual Molestation exclusions.  DSUF #15.  Plaintiff requested that Defendant reconsider its decision, PSUF #9, and Defendant again refused policy coverage.  DSUF #15.

Plaintiff points out that, in confirming its refusal to defend Plaintiff in an August 19, 2008 letter, Defendant "conceded that: 'there is the potential for claims of battery which would be other than sexual battery.'"  PSUF #12.  The actual text of Defendant's August 19 second denial letter reads: "As you indicated in your letter, there is the potential for claims of battery which would be other than sexual battery." Doc. 39 at p 23 of 24.  Defendant responded:

> Our investigation reveals that the sole other allegations against Mr. Quigley were that he applied baby powder to the plaintiff and that he also applied ointment to her privates to alleviate a rash.  This conduct is not accidental in nature and, thus, will not qualify as an "occurrence".  Consequently, the claims arising from this dispute do not involve the "bodily injury" or "property damage" caused by an occurrence" which is necessary to trigger insurance protection under the Insuring Agreement of the policy.

*Id.*[4]

---

[4]    Although the August 19, 2008 letter does not mention the Sexual Molestation exclusion as an alternative basis for rejecting Plaintiff's argument about non-sexual claims of battery, the letter incorporates the July 21, 2008 letter by reference, which does.

III.  **STANDARD OF DECISION**

In general, Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. Pro. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).  Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material.  *Id*.  A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.   *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). The evidence must be viewed in a light most favorable to the nonmoving party. *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products, Inc.*, 268 F.3d 639, 644 (9th Cir. 2001), *amended by* 2001 WL 1490998 (9th Cir. 2001).  Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).

A determination of an insurer's duty to defend may properly be resolved on summary judgment if there are no material issues of fact.   *Centillium Commc'ns, Inc. v. Atl. Mut. Ins. Co.*, 528 F. Supp. 2d 940, 945 (N.D. Cal. 2007).  To prevail on summary judgment, "the insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove that

it cannot." *Id*. (citing *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993) (discussing cross-motions for summary judgment). "Any ambiguous policy terms and any doubt as to whether the facts establish the duty are resolved in the insured's favor." *Id*. (citing *Kazi v. State Farm Fire and Cas. Co.*, 24 Cal. 4th 871, 879 (2001)).

## IV. DISCUSSION

A.   Legal Framework.

"When determining whether a particular policy provides a potential for coverage and a duty to defend, [the court is] guided by the principle that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18 (1995). "[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Id.* at 19. The duty to defend applies to "groundless, false, or fraudulent" claims and is separate from the duty to indemnify. *Id.* The only time a duty to defend does not exist is where there is "no possibility of coverage." *Id*.

"[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id.* The test is "whether the *underlying action for which defense ... is sought* potentially seeks relief within the coverage of the policy." *La Jolla Beach & Tennis Club, Inc. V. Indus. Indem. Co.*, 9 Cal. 4th 27, 44 (1994). The duty to defend is broad, however, it is not unlimited and is generally "measured by the

nature and kinds of risks covered by the policy." *Waller*, 11
Cal. 4th at 19. However, "[o]nce the defense duty attaches, the
insurer is obligated to defend against all of the claims involved
in the action, both covered and noncovered, until the insurer
produces undeniable evidence supporting an allocation of a
specific portion of the defense costs to a noncovered claim."
*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

Defendant argues that the Underlying Complaint does not give
rise to a potential for coverage because: (1) California
Insurance Code § 533 bars coverage as a matter of law; (2) the
gravamen of the Underlying Complaint involves intentional acts,
i.e., battery, sexual battery, and IIED, which are not covered
"occurrences" under the Policy and which are excluded under
Exclusion A; and (3) the Underlying Complaint involves
allegations "arising out of sexual molestation," triggering
Exclusion K.

Plaintiff argues that none of these rationales for denying
him a defense are valid. He maintains that the battery he is
alleged to have committed concerns the application of baby powder
and Neosporin to his step-granddaughter's private areas, the
intent of which was to help, by administering medication, rather
than harm her; the fact that she was, in fact, harmed by
contracting a bladder infection was "accidental," as the
infection was neither intended or expected, precluding operation
of California Insurance Code § 533 and triggering coverage under
the policy for unintended injury arising from an occurrence.

**1. <u>Application of California Insurance Code § 533</u>.**

Plaintiff argues that as a matter of California law, an insurer need not provide liability insurance for the alleged sexual molestation of a child.  Doc. 37 at 16.  Insurance Code section 533 provides that an insurer is not liable for a "wilful act of the insured."  "Section 533 is 'an implied exclusionary clause which by statute is to be read into all insurance policies.'"  *J.C. Penney Casualty Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1019 (1991).

Travelers cites *J.C. Penney*, a duty to indemnify case, for the proposition that "[c]hild molestation is intentional as a matter of law and cannot be considered an "accident."  Doc. 24 at 12.  *J.C. Penney* held "that as a matter of law, section 533 excludes liability insurance coverage for an insured's sexual molestation of a child."  An "insured ... cannot show or attempt to show that he subjectively intended no harm."  *Id.*  "There is no such thing as negligent or even reckless sexual molestation."  *Id.* at 1021. "Some acts are so inherently harmful that the intent to commit the act and the intent to harm are one and the same.  The act is the harm."  *Id.* at 1026.  In *J.C. Penney*, the alleged molester <u>admitted</u> to child molestation in violation of California Penal Code § 288, which necessarily requires admission of "(1) a lewd or lascivious act upon a part of the body (2) of a child under the age of 14 (3) with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires of either the perpetrator or the child."  *Id.* at 1025.

The Ninth Circuit applied *J.C. Penney* to the duty to indemnify and rejected an argument that whenever "there is an

11

allegation that a person touched a child in the anal/genital area, California law presumes that the touching was with the intent to molest." *State Farm Fire & Cas. Co. v. Nycum*, 943 F.2d 1100, 1105 (9th Cir. 1991) ("*State Farm I*"). Instead, the court interpreted *J.C. Penney* to mean that the insurer may reject coverage only if there has been a showing of willfullness.

> As we read it, then, this passage from *J.C. Penney* means only that allegations of child molestation that are accompanied by proof of willfulness-whether by criminal conviction, stipulation or otherwise-are presumed to be willful as a matter of law, and hence are excluded from coverage by § 533. It follows that once the insurer shows that the touching was intentional molestation, the insurer need not make any additional showing. *J.C. Penney* does not, however, relieve the insurer of its initial burden of showing that the act was intentional molestation. Accordingly, we reject State Farm's argument that the mere allegation of sexual molestation precludes coverage as a matter of law.

*Id*. at 1104.

In *Nycum*, the underlying action involved allegations by the parents of a three year old that Nycum touched the child's anal or vaginal area while she was at a child care center in Nycum's home. *Id*. at 1102. Specifically, the child told her mother that Nycum "touched her 'bottom' with a finger, and that it 'hurt' or felt 'bad.'" *Id*. The insurer agreed to provide for Nycum's defense, under a reservation of rights. After trial, a jury returned a general verdict awarding damages to the child and her parents. The Ninth Circuit noted that the jury was instructed on a negligence theory and therefore found "it is entirely plausible that the jury found that Nycum negligently touched [the child].... The distinction [] between 'molestation' and a mere 'touching' is an important one.... to call it molestation [in

**12**

this case] would be to go beyond the record." *Id*. at 1103.

Here, as in *Nycum*, and unlike in *J.C. Penney*, Plaintiff has not admitted sexual misconduct for civil purposes and Defendants have not otherwise demonstrated intentional molestation. His criminal case ended in a hung jury and the charges were resolved by a nolo plea. There has been no adjudication on the merits in the Underlying civil action finding intentional molestation.

Plaintiff does not dispute that he intended to touch his step-granddaughter's private areas to provide "first aid" to her. Instead, he maintains that any harm caused by the touching that occurred could be found to be "negligent" rather than intentional.

The Battery claim in the Underlying Complaint alleges in pertinent part:

> On or about 2002 continuing until October 2003, Defendant, JACK QUIGLEY intentionally and recklessly did acts which resulted in harmful and offensive contact with the Plaintiff's person, including but not limited to: making suggestive and sexual advances, touching Plaintiff in a sexual and offensive manner, and engaging in sexual copulation and other acts of carnal knowledge with Plaintiff, JANE DOE 1.

Doc. 39, Exh. "A" at ¶3. Although this cause of action makes no mention of "negligent first aid" or even the provision of first aid, it does allege intentional conduct of a sexual nature. The victim described the nature of the offensive contact in response to interrogatories served in the Underlying Action as follows:

### *Sexual Molestation*

> Sometime in the latter part of 2002, before her 8th birthday, at various times, Jack Quigley began sexually molesting Jane Doe. Such acts included performing oral sex on Jane Doe; the forcing of Jane Doe to perform oral sex on Jack Quigley. This sexual

13

molestation occurred on approximately 12 different occasions and at three different locations. One of the locations was at [] Beal's Quarter Horses in Clovis, California. Another location was at [] North Riverbend Avenue in Sanger, California. The third location was at [] East Woodhaven in Fresno, California[.] Jane Doe alleges on multiple occasions at the location at Beal's Quarter Horses, Jack Quigley took off Jane Doe's Pants and underwear where he proceeded to rub and pour baby powder onto Jane Doe's pelvic area. On most of these occasions, if not all, Jack Quigley "licked" Jane Doe's vaginal area -- telling her to just lay there and "relax." At the Riverbend location, when Jane Doe would spend the night there with her cousins, Jack Quigley would come into the bedroom where Jane Doe was sleeping -- she doesn't remember at what time during the night but she knows she that she usually was asleep. Jack Quigley would lift her from the bed and take her to the couch. He would usually have his pants down to his legs. He always wore "tidy whites" (white briefs). He would pull out his penis from the front opening and put it in her mouth. Jane Doe specifically remembers that one time, Jack Quigley ejaculated on the side of her face (she still thinks that he was peeing) and she remembers that it went down the side of her neck. On some of these occasions, Jack Quigley would rub his penis on the side of Jane Doe's face until he ejaculated. On a few occasions, (Jane Doe does not remember which) during the daytime when her maternal grandmother, Connie, was at work, Jack Quigley would have Jane Doe perform oral sex on him.


### *Negligence*

**At one of the locations ... at Beal's Quarter Horses in Clovis, California, Jack Quigley, on several different occasions, rubbed Neosporin onto Jane Doe's private areas which resulted in severe urinary tract infection. Jane Doe was required to take substantial amounts of antibiotics, incurred medical expenses and experience[d] substantial pain and suffering due to the negligent acts of Jack Quigley.**

Doc. 63 at at p 6-7 of 31 (emphasis added).[5] This interrogatory

---

[5] Defendant objects to Plaintiff's reliance on these responses to interrogatories, arguing that the information is both immaterial and irrelevant pursuant to Fed. R. Evid. 402. Doc. 56 at 3. This objection is OVERRULED; information pertaining to the factual basis for the underlying offense is

**14**

was answered under oath.  It has not been corrected or withdrawn.
It describes the rubbing of Neosporin into private parts as
"negligent."  This could give rise to a finding of negligent
touching in the Underlying Action.

Defendant rejoins that, when read in context, the
application of "first aid" to the allege victim's private areas
is alleged to have served as a "gateway" to his other alleged
acts of molestation.  Plaintiff has not admitted any allegations
of intentional or sexual misconduct.  Under *Nycum*, absent proof
of willful child molestation "whether by criminal conviction,
stipulation or otherwise" § 533 does not bar coverage.[6]

### 2.   Is Conduct Alleged in the Underlying Complaint a Covered Occurrence?

Defendants next argue that the acts alleged in the
Underlying Complaint are not covered "occurrences."  The Policy

---

relevant to the duty to defend.  *See La Jolla Beach*, 9 Cal. 4th
at 44 (the inquiry is "whether the underlying action for which
defense ... is sought potentially seeks relief within the
coverage of the policy.").  At oral argument, Defendant moved the
entire set of responses to interrogatories into evidence.  Doc.
63.

[6]     The holdings from *J.C. Penney* and *State Farm I* are
expressly limited to the application of Insurance Code § 533.
Holding that § 533 barred coverage, *J.C. Penney* failed to address
other possible defenses, 52 Cal. 3d at 1020 n.8, and the Ninth
Circuit declined to discuss other possible defenses or exclusions
because it lacked "any indication that the policy exclusions
extended to damages not precluded by § 533," 943 F.2d at 1103.
Although *J.C. Penney* indicated that the parties to an insurance
policy cannot contract for coverage that is barred by § 533, it
nowhere discussed whether a Policy could underline exclude coverage that is
not excluded by § 533.  52 Cal. 3d at 1019 n.8.

15

provides in pertinent part:

> If a claim is made or suit is brought against any insured for damages because of bodily injury or property damage caused by an <u>occurrence</u> to which this coverage applies, even if the claim or suit is false we will:
>
> > a. Pay up to our limit of liability for the damages for which an insured is legally liable. Damages include prejudgment interest awarded against an insured; and
> >
> > b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit or liability.

Doc. 22 at pp 47-48 of 76 (emphasis added). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which result, during the policy period, in: a. bodily injury; or b. property damage." Doc. 22 at 33 of 76. The policy does not define "accident."

Under California law, "the meaning of the term 'accident' is not settled." *State Farm Fire and Cas. Co v. Superior Court*, 164 Cal. App. 4th 317, 325 (2008) ("*State Farm II*") (citing *Hogan v. Midland National Ins. Co.*, 3 Cal. 3d 553, 559 (1970); *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal. 2d 558, 563-564, (1959)). Numerous cases have held that where the conduct is deliberate or volitional, the incident is not an "accident" for the purposes of insurance law. *Id*. However, "the term 'accident" has also been used to refer to the unintended or unexpected consequence of the act." *Id*. "The fact that an act which causes an injury is intentional does not take the

consequence of that act outside the coverage of a policy which excludes damage unless caused by accident for if the consequence that is the damage or injury is not intentional and is unexpected it is accidental in character. " *Id*. at 325-36 (quoting *Meyer v. Pacific Employers Ins. Co.* 233 Cal. App. 2d 321, 327 (1965)). In *Geddes*, the California Supreme Court stated that an "accident" is "a casualty -- something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured. It includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event." 51 Cal. 2d at 563 (internal citations and quotations omitted).

In *State Farm II*, a young man, Lint, who resided with his parents, got into an argument with another young man, Wright, at a party. 164 Cal. App. 4th at 320. "After an exchange of words, Wright went outside. Lint followed Wright, grabbed him, picked him up, and threw him into the shallow end of the swimming pool. Wright landed on the pool's concrete step, which was not covered by water. Wright sustained a fractured right clavicle and was hospitalized.... Lint apologized to Wright...[telling] him that Lint had not meant to hurt him. Wright characterized the incident as 'horse-playing around.'" *Id*. In evaluating whether State Farm, which insured Lint's parents had a duty to defend Lint, the court discussed a number of examples of cases applying these principles:

> In *Flores*, ... Sanders was the driver of an insured automobile in which Perez was the passenger [armed] with a gun. The two agreed to drive into Santa Barbara to seek retribution against Flores for an earlier assault on Sanders. As Sanders drove by, Perez

17

intentionally shot at Flores, who was standing on the street, injuring him. (*[Insurance Exchange v.] Flores*, 45 Cal. App. 4th at p. 667) The automobile policy at issue contained a provision ... in which an occurrence was defined to mean an accident. (*Id*. at p. 669) *Flores* discussed cases in which the insured engaged in reckless conduct that caused covered injury: leaving a loaded hair trigger weapon on one's lap while driving over a bumpy road, flipping eggs out of a car at 40 miles per hour, and drunk driving. (*Id*. at pp. 669-670 [citations]) Those cases, *Flores* noted, "all constituted 'accidents' within the meaning of personal injury insurance policies because the injuries are not intended or expected." (*Flores*, supra, at p. 671) *Flores* held, unlike the three cases above recited, that the shooting was not an accident because all of the conduct was planned and "Sanders therefore intended and expected injury to result from his acts." (Ibid.,[].)

*Meyer v. Pacific Employers Ins. Co., supra*, 233 Cal. App. 2d 321, is analogous because the court focused on the consequence of a deliberate act. While drilling a well, the drilling company caused the ground to vibrate resulting in damage to the neighbor's property and buildings. Although the policy language was different, the issue in Meyer was whether the adjacent property's damage was an accident. (*Id*. at p. 325.) *Meyer* held that an accident existed because although the company intentionally drilled, there was no evidence that it "intended or expected the vibrations which their operation set in motion would cause damage to plaintiffs' property." (*Id*. at p. 327, fn. omitted.)

*National American Ins. Co. v. Insurance Co. of North America, supra*, 74 Cal.App.3d 565, is also instructive. There, four teenagers riding in a car indiscriminately "flipped" eggs at houses and other targets. While their automobile was moving at 40 miles per hour, one of the teens threw an egg at a pedestrian, causing the victim to lose sight in one eye. (*Id*. at p. 569.) In holding that the injuries arose out of the use of an automobile, the appellate court affirmed the trial court's finding that liability resulted from an " 'accident,'" under the policy, triggering coverage. (*Id*. at p. 571.)

Similarly, in *Hogan v. Midland National Ins. Co., supra*, 3 Cal.3d 553, the insured sold a defective saw that cut lumber more narrowly than it should have. (*Id*. at pp. 557-559.) Hogan focused on the foreseeability of the damages, stating, " 'Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause.'" (*Id*. at p. 559 [].)

> As summarized by *Merced Mutual Ins. Co. v. Mendez*
> (1989) 213 Cal.App.3d 41, at page 50, "coverage is not
> always precluded merely because the insured acted
> intentionally and the victim was injured. An accident,
> however, is never present when the insured performs a
> deliberate act unless some additional, unexpected,
> independent, and unforeseen happening occurs that
> produces the damage. [Citation.] Clearly, where the
> insured acted deliberately with the intent to cause
> injury, the conduct would not be deemed an accident.
> Moreover, where the insured intended all of the acts
> that resulted in the victim's injury, the event may not
> be deemed an 'accident' merely because the insured did
> not intend to cause injury." (*Ibid*., italics added.) An
> injury is not accidental when "[a]ll of the acts, the
> manner in which they were done, and the objective
> accomplished occurred exactly as appellant intended."
> (*Merced Mutual*, *supra*, at p. 50.) "Conversely, an
> 'accident' exists when any aspect in the causal series
> of events leading to the injury or damage was
> unintended by the insured and a matter of fortuity."
> (*Ibid*.[].)

*Id*. at 326-28 (parallel citations omitted).

Based on these cases, *State Farm II* determined that Lint's conduct "parallel[ed] the baseball batter, the egging in *National American Ins. Co*., the speeding driver in posited by *Merced Mutual Ins. Co*., and the drilling company in *Meyer*." *Id*. at 328.

> Although he deliberately picked Wright up and threw him
> at the pool, Lint did not intend or expect the
> consequence, namely, that Wright would land on a step.
> Lint miscalculated one aspect in the causal series of
> events leading to Wright's injury, namely, the force
> necessary to throw Wright far enough out into the pool
> so that he would land in the water. It is undisputed
> that Lint did not intend to hurt Wright; he merely
> intended that Wright land farther out into the water
> and "get ... wet." No doubt Lint acted recklessly. But,
> just as the teenagers irresponsibly flipping eggs did
> not intend to cause the victim to lose an eye, or the
> intentional speeder did not plan to hit another car,
> Lint rashly threw Wright at the pool without expecting
> that Wright would land on the cement step. Stated
> otherwise, the act directly responsible for Wright's
> injury, throwing too softly so as to miss the water,
> was an unforeseen or undesigned happening or
> consequence and was thus fortuitous. [Citation.] The
> event here was an accident because not all of the acts,
> the manner in which they were done, and the objective

19

> accomplished transpired exactly as Lint
> intended.[Citations]

*Id*. at 328-29.

Plaintiff maintains that, like in *State Farm II* and the cases it cites, while he intended to and did apply baby powder and Neosporin, Plaintiff did not intend to cause harm when he provided "first aid" to his step-granddaughter, even though it "unexpectedly" resulted in an infection. Plaintiff maintains his alleged conduct qualifies as an "occurrence" under the Policy.

Travelers suggests that the sexual aspect of the allegations renders *State Farm II* inapplicable. However, the cases upon which Travelers relies are unhelpful. For example, in *Merced Mutual Ins. Co. v. Mendez*, 213 Cal. App. 3d 44, 50 (1989), an alleged victim of a sexual assault sued her alleged attacker, Mendez. Contrary to Travelers' suggestion, *Mendez* simply applied the standard approach used in *Sate Farm II* to distinguishing between covered "accidents" and non-covered, intentional conduct. *Id*. at 41. Mendez admitted engaging in sexual activity with the victim, but asserted it was consensual. Mendez sought coverage under his homeowners insurance policy, but coverage was denied, in part on the ground that Mendez's acts were intentional and therefore not covered occurrences under his policy. The court reasoned:

> We agree coverage is not always precluded merely
> because the insured acted intentionally and the victim
> was injured. An accident, however, is never present
> when the insured performs a deliberate act unless some
> additional, unexpected, independent, and unforeseen
> happening occurs that produces the damage. (Ibid.)
> Clearly, where the insured acted deliberately with the
> intent to cause injury, the conduct would not be deemed
> an accident. <u>Moreover, where the insured intended all
> of the acts that resulted in the victim's injury, the
> event may not be deemed an "accident" merely because</u>

20

1   <u>**the insured did not intend to cause injury. Conversely,**</u>
    <u>**an "accident" exists when any aspect in the causal**</u>
2   <u>**series of events leading to the injury or damage was**</u>
    <u>**unintended by the insured and a matter of fortuity.**</u>
3
    **The following is illustrative. When a driver**
4   **intentionally speeds and, as a result, negligently hits**
    **another car, the speeding would be an intentional act.**
5   **However, the act directly responsible for the**
    **injury-hitting the other car-was not intended by the**
6   **driver and was fortuitous. Accordingly, the occurrence**
    **resulting in injury would be deemed an accident. On the**
7   **other hand, where the driver was speeding and**
    **deliberately hit the other car, the act directly**
8   **responsible for the injury-hitting the other car-would**
    **be intentional and any resulting injury would be**
9   **directly caused by the driver's intentional act.**

10  **In the present case, Mendez admits intentionally**
    **engaging in sexual activity with Ms. Perry. This sexual**
11  **activity, which Ms. Perry alleges occurred against her**
    **will, forms the basis of her action against Mendez. All**
12  **of the acts, the manner in which they were done, and**
    **the objective accomplished occurred exactly as**
13  **appellant intended. No additional, unexpected,**
    **independent or unforeseen act occurred. "Whatever the**
14  **motivation," because Mendez's conduct was "calculated**
    **and deliberate" (*Hogan, supra*, 3 Cal.3d at p. 560, 91**
15  **Cal.Rptr. 153, 476 P.2d 825), it was not an "accident"**
    **and thus not an "occurrence" within the meaning of the**
16  **policy provision.**

17  *Id*. at 50.

18      As explained above, Plaintiff does not dispute that he

19  intended to touch his step-granddaughter's private areas to

20  provide "first aid" to her.  That this resulted in an unexpected,

21  unintended infection is an unforseen happening.  However, he

22  maintains that, at least with respect to the underlying Battery

23  claim, one step in the causal series of events (i.e., whatever

24  caused the alleged victim to contract a bladder infection as a

25  result of Plaintiff's application of Neosporin) was unintended

26  and a matter of fortuity.

27      Defendant relies on the holding from *J.C. Penney* that

28  "[s]ome acts are so inherently harmful that the intent to commit

21

the act and the intent to harm are one and the same. The act is the harm." 52 Cal. 3d at 1026. But, as discussed above, *J.C. Penney* only applies where the alleged molester <u>admitted</u> he intended to molest his victim and pled guilty to related criminal charges. *Id*. at 1014.

*Horace Mann Ins. Co v. Barbara B.*, 4 Cal. 4th 1076, 1079 (1993), further defines how *J.C. Penney* should be applied in a duty to defend case involving potential acts of negligence alleged alongside sexual molestation. In *Horace Mann*, a student sued her seventh grade teacher alleging sexual molestation and other harassing conduct. The teacher pled nolo contendere to one count of violating California Penal Code section 288(a), lewd or lascivious acts upon a minor. *Id.* The teacher sought coverage under an educator's liability policy issued by Horace Mann, which promised to defend the insured in civil suits covered by the terms of the policy. *Id.* at 1080. Horace Mann denied it had a duty to defend the teacher, citing § 533; an exclusion in the policy for civil suits arising out of an act, other than corporal punishment, that has been held to be a crime; and an exclusion for occurrences involving damages that are the intended consequence of action taken by the insured. *Id.*

The court emphasized that the complaint, which was amended to include a claim for "negligent[], careless[], reckless[], and wanton[] ... sexual <u>and nonsexual conduct</u>," evidenced "a possibility that [the teacher] would be held liable for damages within the coverage of the policy stemming from [the teacher's] negligent nonsexual conduct in his public relationship with [the minor]." *Id.* at 1083 (emphasis added).

The court rejected Horace Mann's argument that the teacher's alleged misconduct could not possibly give rise to liability because the "admitted molestation is the "dominant factor" in this case."

> The argument misconceives the role of the court in determining the duty to defend. <u>We look not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy.</u> Since an insurer has a duty to defend the entire third party action if any claim encompassed within it potentially may be covered (absent allocation, as noted above), the mere fact that Horace Mann could not indemnify [the teacher] for the molestation did not eliminate its duty to defend other, possibly covered claims....

*Id*. at 1084.

The court also rejected Horace Mann's argument that "every sexual molestation case is susceptible to allegations of misconduct not rising to the level of sexual molestation, and that, as a consequence, recognition of a duty to defend in this case would encourage parties to 'plead around' *J.C. Penney*."

> Along similar lines, the Court of Appeal characterized much of the misconduct recited in counsel's letter as "parasexual" and therefore inseparable from the molestation.
>
> We think such an argument misses the point of the allegations contained in counsel's letter. <u>The gravamen of each of the so-called "parasexual" actions</u>-"[a]llowing Barbara B[.] to sit on his lap in front of other students," "[k]issing Barbara B[.] on the forehead in front of other students," "[h]ugging Barbara B[.] in front of other students," "[p]utting his arm around Barbara B [.] in front of other students"-<u>was its commission in front of other students</u>. Horace Mann has not shown that any of those public acts were inherently harmful or amounted to sexual molestation, so as to come within *J. C. Penney's* bar to indemnity. The possibility of a duty to indemnify remains because the alleged acts arose from Lee's interaction with students in the course of his educational activities. While one might reasonably

23

> question the appropriateness of teachers engaging in
> such behavior in the classroom, we cannot say, as a
> matter of law on the record before us, that such
> conduct does not raise a possibility of a duty to
> indemnify under the policy of insurance which was
> issued to Lee.
>
> If the parties to a declaratory relief action dispute
> whether the insured's alleged misconduct should be
> viewed as essentially a part of a proven sexual
> molestation, or instead as independent of it and so
> potentially within the policy coverage, then factual
> issues exist precluding summary judgment in the
> insurer's favor. Indeed, the duty to defend is then
> established. (*See Hogan v. Midland National Ins. Co.,
> supra*, 3 Cal.3d at p. 564.) Here, the parties disputed
> not only whether the acts alleged to be harassment
> constituted part of the molestation, but also whether
> those acts actually occurred. The latter dispute
> implicates the insurer's duty to defend groundless
> claims.

*Id*. at 1082-83.

Critical to the reasoning in *Horace Mann* was the fact that
the allegations concerning so-called "parasexual acts," like
hugging, kissing, and the accused's allowing the alleged victim
to sit on his lap, were not inherently harmful because they were
evaluated by the impact such actions had on the victim's social
relations with other students. In other words, even though the
teacher's nolo plea established his sexual molestation of the
victim under state law for purposes of *J.C. Penney*, the other
allegations concerned his "public embarrassment" of the victim,
which implicated a different (non sexual) legal interest. *Id*. at
1084. Because the insurer did not establish that these acts
were "were inherently harmful or amounted to sexual molestation,
so as to come within *J.C. Penney's* bar to indemnity," a duty to
defend attached.

*Horace Mann* acknowledged that "[i]n many cases the

plaintiff's allegations of molestation and other misconduct may be inseparably intertwined (e.g., when the molestation allegedly was carried on in secret, without any distinct injury to the plaintiff's social relations)."  *Id*. at 1085.  *Horace Mann* concluded that "the record is devoid of evidence demonstrating that Lee's acts of public embarrassment of [the alleged victim] occurred in such close temporal and spatial proximity to the molestation as to compel the conclusion that they are inseparable from it for purposes of determining whether Horace Mann owed a duty to defend Lee."  *Id*. at 1084; *see also Coit Drapery Cleaners v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1608 (1993) (in case with "no unresolved factual issues as to the intentionality of [defendant's harassing conduct," where certain allegedly negligent conduct can be considered "inseparable" from the intentional sexual molestation or harassment, there is no duty to defend); *Jane D. v. Ordinary Mutual*, 32 Cal. App. 4th at 643, 645 (1995)(where defendant priest admitted the material allegations against him through default judgment, duty to defend was not triggered merely because the underlying complaint contained both allegations of molestation and allegations of non-sexual conduct, namely misusing counseling techniques to control and induce plaintiff's sexual behavior; the sexual and non-sexual allegations were inextricably intertwined).

Here, Defendant asserts that any allegations of negligent provision of first aid are "inextricably intertwined" with the allegations of molestation and therefore, under *Horace Mann, Coit Drapery*, and *Jane D.*, there is no duty to defend.  But, Defendant

again ignores that in all three of the cited cases, the underlying molestation allegations were admitted or otherwise proven. Here, plaintiff does not admit, steadfastly denies, and there is no conclusive proof of the underlying molestation allegations, these cases do not control. *Horace Mann* also cited *State Farm I,* 943 F.2d 1100, for the proposition that "if facts known to the insurer suggest a possibility that what plaintiff alleges to be sexual molestation may be found to be merely a negligent touching ... then there is potential coverage and consequently a duty to defend." *Id*. at 1085. *State Farm I* rejected an argument that whenever "there is an allegation that a person touched a child in the anal/genital area, California law presumes that the touching was with the intent to molest." 943 F.2d at 1105. Instead, the court interpreted *J.C. Penney* to mean only that once there has been a showing of intentional molestation, the insurer may reject coverage.

Here, Plaintiff has not admitted intentional sexual misconduct. Defendant has not otherwise demonstrated intentional molestation. California Penal Code § 1016 provides that a nolo contendere plea to a "crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes," while "[i]n cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes into the voluntariness of, and factual basis for ... may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." Unlike in *Horace Mann*, where the teacher

26

entered a nolo plea to a felony, Plaintiff's nolo plea here was to a misdemeanor. *See* Doc. 43 at p.9-10 of 12 ("Misdemeanor: Advisement, Waiver of Rights, and Plea Form," signed by Jack Quigley on February 25, 2008. A plea to a count of annoying or molesting a child, Cal. Penal Code § 647.6(a), does not necessarily involve acts of sexual misconduct, *see United States v. Pallares-Galan*, 359 F.3d 1088, 1102-03 (9th Cir. 2004) (finding conviction under § 647.6(a) does not necessarily establish defendant committed an act of "sexual abuse of a minor" for purposes of federal aggravated felony provision, 8 U.S.C. § 1326).

To the extent a battery claim based on negligence could be proved based on Plaintiff's interpretation of the facts, the Underlying Action raises allegations that trigger coverage under the Policy.

### 3. Does the Sexual Molestation Exclusion Apply?

Alternatively, Defendant maintains that the Underlying Complaint involves "intentional" acts and/or allegations "arising out of sexual molestation," triggering the operation of Exclusions A and K, which provide:

> Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:
>
> ***
>
> a. which is expected or intended by any insured...
>
> ***

27

**k. [a]rising out of sexual molestation, corporal**
                    **punishment or physical or mental abuse ....**

Doc. 22 at 48, 49 of 76.  The policy does not define "sexual
molestation."

       The parties raise no different arguments concerning the
application of this exclusionary language that are not addressed
above.

       There is sparse authority interpreting sexual molestation
exclusions like the one present in the Travelers Policy.  In
*Farmer ex rel. Hansen v. Allstate Ins. Co*, 311 F. Supp. 2d 884
(C.D. Cal. 2004), Nadine Varela operated a day care business out
of her home, where she lived with her husband, Carlos.  *Id*. at
885-86.  Over an approximately two year period, Mr. Varela
sexually molested one of the children who attended the daycare
program at the home.  *Id*. at 886.  He was convicted under
California Penal Code § 288.5 (lewd and lascivious acts with a
minor).  *Id*.  The victim sued Mrs. Varela, alleging assault and
battery, intentional infliction of emotional distress, negligent
infliction of emotional distress, negligence, and premises
liability.  *Id*.  Mrs. Varela tendered defense of the lawsuit to
her homeowners insurer.  A defense was denied on several grounds,
including the operation of the policy's exclusion for losses
"arising out of sexual molestation, corporal punishment or
physical or mental abuse inflicted upon any person by or at the
direction of any insured person...."  *Id*. at 886-87.

       The insurer contended that because "no injuries exist apart
from those arising out of Mr. Varela's molestation," the alleged

28

injuries are excluded from coverage. *Id*. at 894. Plaintiff argued that because Mrs. Varela did not sexually molest the alleged victim, coverage attaches. *Id*. The *Farmer* court looked to *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449 (9th Cir. 1988), for guidance.

> In *Gilbert*, Albert and Margaret Gilbert appealed from a district court's order granting summary judgment in favor of Allstate Insurance Co. on Allstate's declaratory relief action seeking a determination that it had no duty to defend or indemnify the Gilberts under a homeowner's insurance policy. The relevant facts are as follows. After Mr. Gilbert was convicted of sexually molesting Jennifer Stangle, a child under fourteen years of age, Stangle and her parents filed a civil action against both Mr. and Mrs. Gilbert. As to Mrs. Gilbert, the complaint alleged that she negligently cared for and supervised Stangle and that she was negligent in failing to take steps to prevent Mr. Gilbert's acts of sexual molestation. Allstate refused to defend or indemnify the Gilberts on account of an exclusion that expressly excluded coverage for injuries intentionally caused by "an insured person." *Id*. at 450-51.
>
> The *Gilbert* court affirmed [the] district court's finding that the claims against Mrs. Gilbert resulted from intentional acts by "an insured" under the policy (Mr. Gilbert) and, therefore, that the insurer had no duty to defend or indemnify Mrs. Gilbert. The court stated:
>
>> We hold that by excluding insurance coverage for injury or damage intentionally caused by "an insured person," Allstate unambiguously excluded coverage for damages caused by the intentional wrongful acts of any insured under the policies. The [underlying] complaint seeks to recover damages for injuries intentionally caused by Albert Gilbert, "an insured person" under the policies. Coverage for these injuries is thus precluded whether compensation is sought from Albert or Margaret.

*Id*. at 894-95. The district court found that the sexual molestation exclusion applied to bar coverage for claims against Mrs. Varela because Mr. Varela, whose <u>proven</u> acts of molestation

29

were intentional in nature, was also an insured.  *Id.* at 895.
*See also Bankers Ins. Co. v. Russell*, 2009 WL 1162636, *5 (D.S.C.
2009) (reviewing cases similar to *Farmers*, finding that sexual
molestation exclusions bar coverage for allegations that insured
acted negligently by failing to protect children from proven
and/or admitted sexual molestation by others).  *Farmers*, *Bankers*,
and the cases cited in *Bankers* are readily distinguishable from
this case, where no acts of molestation have been proven or
admitted.

Travelers' could have, but did not, define its policy terms
more broadly to encompass the allegations in this case.  *E.g.,*
*CNA Intern. Reinsurance Co v. CPB Enterprises, Inc.*, 982 F. Supp.
831, 834 (S.D. Ala. 1997)*;* (reviewing exclusion for "Sexual
and/or Physical abuse means sexual or physical injury or abuse,
including but not limited to assault and battery, negligent or
deliberate touching, corporal punishment and mental abuse.");
*Scottsdale Ins. Co. v. Education Management, Inc.*, 2006 WL
2803052, *3 (E.D. La. 2006) (same)*; St Paul Fire and Marine Ins*
*Co. v. Gold*, 149 F.3d 1191 at *5 (10th Cir. 1998)(table)
(exclusion for "injury that results from any kind of sexual
contact or activity ..." where policy specifically indicates it
will be applied "whether or not ... the sexual contact or
activity was accidental, intentional or negligent"); *Barringer v.*
*Rausch*, 900 So. 2d 232, 235 (La. App. 2 Cir. 2005) (same)*;*
*S.J.A.J. v. First Things First*, 2000 WL 463309, *2 (Wis. App.
2000) (concerning a policy that "does not apply ... to any Claims
made or Suits brought against any Insured alleging, in whole or

in part, sexual assault, abuse, molestation, or licentious, immoral, amoral or other behavior which threatened, led to or culminated in any sexual act whether committed intentionally, negligently, inadvertently or with the belief, erroneous or otherwise, that the other party is consenting and has the legal and mental capacity to consent thereto, that was committed, or alleged to have been committed by the Insured or by any person for whom the Insured is legally responsible.").

Under the unique facts of this case, Travelers' duty to defend the negligence claim is not obviated by the Sexual Molestation exclusion. Whether apportionment is possible is not before the court for decision.

One issue remains. As a condition of his nolo plea, Plaintiff was required to register as a sex offender. Judicial notice can be taken of the fact that Plaintiff so registered,[7] and is listed there as having committed an offense under California Penal Code § 647.6(a) (annoying/molesting a child). No party has argued that this registration amounts to an admission of willful molestation for purposes of this case or the underlying civil lawsuit. Under California law, Plaintiff's nolo plea to a <u>misdemeanor</u> and any admissions required by the court during that plea are inadmissible in any civil suit "based upon or growing out of" the act upon which the prosecution was based. *See* Cal. Penal Code § 1016. Because registration was required by

---

[7]    *See* http://www.meganslaw.ca.gov/cgi/prosoma.dll?
searchby=offender&id=17108094M0248 (last visited May 11, 2009).

31

the court as a condition of Plaintiff's nolo plea, § 1016's prohibition against admission in evidence in the civil case applies to his sex offender registration. This conclusion is appropriate given that Plaintiff continues to maintain that he did not engage in any acts of a sexual nature and that any sexual contact was accidental and unintended.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED; Defendant's motion is DENIED. Travelers' owes Plaintiff a defense in the Underlying Action. Plaintiff shall lodge a form of order consistent with this memorandum decision within five days of electronic service.

IT IS SO ORDERED.

Dated: __May 27, 2009__             _____/s/ Oliver W. Wanger_____
                                   UNITED STATES DISTRICT JUDGE